<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| HAROLD CHRISTIE, | : | **Hon. Freda L. Wolfson** |
|  | : |  |
| Petitioner, | : |  |
|  | : | Civil No. 11-7070 (FLW) |
| v. | : |  |
|  | : |  |
| BRIAN ELWOOD, et al., | : | <u>**OPINION**</u> |
|  | : |  |
| Respondents. | : |  |
|  | : |  |

**APPEARANCES**:

> HAROLD CHRISTIE, A 035 899 211
> Monmouth County Correctional Institution
> 1 Waterworks Road
> Freehold, New Jersey 07728
> Petitioner <u>Pro</u> <u>Se</u>

> COLETTE R. BUCHANAN, Assistant United States Attorney
> UNITED STATES ATTORNEY
> 970 Broad Street, Room 700
> Newark, New Jersey  07102
> Attorneys for Respondents

<u>WOLFSON</u>, District Judge:

Harold Christie, confined at Monmouth County Correctional Institution in Freehold, New Jersey, filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 challenging his pre-removal-period mandatory detention, pursuant to 8 U.S.C. § 1226(c), in the custody of respondents and the Department of Homeland Security ("DHS").  Respondents filed an Answer, a declaration, and several exhibits.  For the reasons expressed in this Opinion, this Court holds that Petitioner's detention is governed by 8 U.S.C. § 1226(a) because DHS did not take Christie into custody when he was released from criminal incarceration for an offense underlying the

removal charges, grants a Writ of Habeas Corpus, and directs that the Immigration Judge to

conduct a bond hearing pursuant to 8 U.S.C. § 1226(a)(2) to determine if he is a flight risk or

danger to the community.

## I.  BACKGROUND

Harold Christie, a native and citizen of Jamaica, challenges his detention in the custody of

DHS at Monmouth County Correctional Institution.  The facts are undisputed.  Christie

emigrated to the United States from Jamaica as a lawful permanent resident on October 14, 1976,

when he was 17 years old.  On September 22, 2011, DHS arrested, detained, and served Christie

with a Notice to Appear charging him with removability pursuant to sections 237(a)(2)(A)(ii)

(conviction of two crimes of moral turpitude), 237 (a)(2)(A)(iii) (aggravated felony conviction),

and 237 (a)(2)(B)(i) (conviction of controlled substance violation), based on six convictions for

criminal sale of marijuana in the fourth degree, contrary to NYPL § 221.40, on September 3,

1985, July 2, 1992, February 15, 1994, March 8, 1994, November 17, 1995, and July 17, 1996.

(Notice to Appear) [Dkt. 8-4 at 55.]  On January 13, 2012, DHS filed Form I-261, also charging

Christie with removal based on his June 10, 1999, conviction of criminal possession of marijuana

in the fifth degree, contrary to NYPL § 221.10(1), for which he was sentenced to time served of

one day and six months suspension of license.[1]  [Dkt. 8-1 at 3; 8-4 at 40.]  On January 18, 2012,

DHS filed and served another Form I-261 charging him with removability based on his August 3,

2010, conviction of unlawful possession of marijuana in violation of NYPL § 221.05, for which

he was sentenced to a $100 fine.  [Dkt. 8-4 at 57-59.]

---

[1] This Court was not able to locate the Form I-261 for the June 10, 1999, conviction in the
record, but relies on the declaration of Deportation Officer Yolanda Harrison for this
information.  [Dkt. 8-1 at 3.]

DHS has detained Christie without a bail hearing from September 22, 2011, to date, pursuant to 8 U.S.C. § 1226(c).  [Dkt. 8 at 2.]  Although this Court's Order to answer [Dkt. 3] directed respondents to file documentation showing the dates on which Christie was released from criminal incarceration for the offenses underlying the removal charges, this Court was not able to locate documentation of his release date(s) in the record.  Based on the declaration of Deportation Officer Yolanda Harrison, it appears that Christie was released from criminal incarceration after the October 9, 1998, effective date of 8 U.S.C. § 1226(c) on one occasion, i.e., June 10, 1999, when he was sentenced to time served of one day and suspension of license (six months), for criminal possession of marijuana in violation of NYPL § 221.10.[2]  [Dkt. 8-4 at 18; Dkt. 8-4 at 40.]  The certificate of disposition shows that Christie was fined but not sentenced to imprisonment for his August 3, 2010, conviction for unlawful possession of marijuana in the fifth degree; the certificate of disposition lists May 26, 2010, as "Date of Arrest/Issue" but does not establish that Christie was incarcerated for this offense.  [Dkt. 8-4 at 59.]

Christie executed the § 2241 Petition presently before this Court on December 1, 2011. The Clerk received it on December 6, 2011.  In the Petition, Christie argues that he is not subject to mandatory pre-removal period detention under 8 U.S.C. § 1226(c) because he was not taken into custody when he was released from criminal incarceration for a crime underlying the charges for removal, and he is entitled to a bond hearing pursuant to 8 U.S.C. § 1226(a).  He seeks a Writ of Habeas Corpus directing respondents to either release him from custody or provide a hearing.

---

[2] Respondents documented the June 10, 1999, conviction of criminal possession of marijuana in the fifth degree with "certificate of disposition" number 69454 indicating that Christie was arrested on June 9, 1999, and charged with violation of NYPL § 221.10, and on June 10, 1999, he pled guilty to the charge and was sentenced to imprisonment of time served and suspension of license for six months. [Dkt. 8-4 at 40.]

By Order entered December 20, 2011, this Court ordered service on respondents and

ordered respondents to file an answer and relevant documents, including documents charging

Christie with removability and documentation of his release(s) from criminal incarceration for

charges upon which his removability is based.  Although the Answer does not expressly state the

date(s) on which Christie was released from criminal incarceration for conviction(s) underlying

the charges for removal, respondents concede that DHS did not take Christie into custody when

he was released from criminal incarceration after October 9, 1998, for any crime underlying the

removal charges.  Respondents argue:  (1) Christie's case is distinguishable from Burns v.

Cicchi, 702 F. Sup. 2d 281 (D.N.J. 2010), because, unlike Burns, Christie was released from

criminal incarceration for a removable offense after the October 9, 1998, effective date of 8

U.S.C. § 1226(c)[3]; and (2) this Court should defer to the Board of Immigration Appeals's

("BIA") interpretation of 8 U.S.C. § 1226(c) in Matter of Rojas, 23 I. & N. Dec. 117 (BIA 2001),

because the "when released" clause in § 1226(c) is ambiguous and the BIA's interpretation is

reasonable.  Respondents contend that, under the BIA's reading of § 1226(c) in Rojas, "an alien

convicted of an enumerated offense was subject to mandatory detention even if there was a gap

between his release from criminal custody [after October 9, 1998,] and entry into DHS custody."

(Answer at 16) [Dkt. 8 at 16.]

---

[3] This Court notes that when DHS took Christie into custody on September 22, 2011, and
when Christie filed his § 2241 Petition, DHS had not charged him with a removable offense for
which he was criminally incarcerated after the effective date of § 1226(c) on October 9, 1998.
(Notice to Appear) [Dkt. 8-4 at 55.]  DHS charged Christie in January 2012 with removal based
on his June 10, 1999, conviction for which he served one day of criminal incarceration.

## II.  DISCUSSION

Given that in January 2012 DHS charged Christie with removal on the basis of his criminal possession of marijuana conviction dated June 10, 1999, which imposed a sentence of imprisonment of time served of one day, this case is not governed by Burns v. Cicchi, 702 F. Supp. 2d 281.  Unlike Burns, who was not released from criminal incarceration after the October 9, 1998, effective date of § 1226(c), Christie was released from criminal incarceration after October 9, 1998, for a conviction on June 10, 1999, which sentenced him to time served of one day.[4]  [Dkt. 8-4 at 40.]  In light of the additional charge of removability based on the June 10, 1999, conviction, this Court liberally construes the Petition as arguing that Christie is not subject to mandatory detention under 8 U.S.C. § 1226(c) because DHS did not take him into custody when he was released from incarceration on June 10, 1999, but waited for 12 years to arrest him on September 22, 2011.  The government argues that this Court should defer under Chevron USA, Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984), to the BIA's determination of § 1226(c) in Matter of Rojas, 23 I.&N. Dec. 117 (BIA 2001).  Thus, the question in this case is one that was left unanswered in Burns v. Cicchi, i.e., does the statutory command that DHS "shall take into custody any alien [specified in this section] when the alien is released" mean that DHS shall take the alien into custody "when the alien is released," or does it mean that DHS shall take the alien into custody 12 years after the alien is released?

---

[4] Christie was also arrested on May 26, 2010, for alleged violation of NYPL § 221.10 and § 221.05; he pled guilty and was sentenced to a $100 fine on August 3, 2010, but the certificate of disposition does not establish that Christie was incarcerated for this offense, but indicates merely that May 26, 2010, was "Date of Arrest/Issue."  [Dkt. 8-4 at 59.]

A.  Jurisdiction

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied:  (1) the petitioner is "in custody," and (2) the custody is "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); Maleng v. Cook, 490 U.S. 488, 490 (1989).  This Court has subject matter jurisdiction over the Petition under § 2241 because Petitioner was detained within its jurisdiction in the custody of DHS at the time he filed his Petition, see Spencer v. Kemna, 523 U.S. 1, 7 (1998), and he asserts that his mandatory detention is not statutorily authorized by 8 U.S.C. § 1226(c).  See Zadvydas v. Davis, 533 U.S. 678, 699 (2001); Diop v. ICE/Homeland Security, 656 F. 3d 221, 226 (3d Cir. 2011).

B.  Exhaustion

The government has not raised failure to exhaust administrative remedies as an affirmative defense.  Although 28 U.S.C. § 2241 contains no exhaustion requirement, "[o]rdinarily, federal prisoners are required to exhaust their administrative remedies prior to seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241."  Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998).  However, where the petitioner is challenging an agency's precedential interpretation of a statute, the purposes of exhaustion would not be served and exhaustion is not required because it would be futile.  See Woodall v. Federal Bureau of Prisons, 432 F. 3d 235, 239 n.2 (3d Cir. 2005).  In this case, exhaustion is not required because the BIA has interpreted § 1226(c)(1) in a precedential opinion as requiring detention in a case like Petitioner's.  See Matter of Rojas, supra.

6

C.  Relevant Statutes

The statutory authority to detain an alien depends on the stage of the removal process. Section 1226 governs the pre-removal-period detention of an alien; § 1231(a)(2) mandates detention during the removal period established in § 1231(a)(1)(B); and § 1231(a)(6) provides the Attorney General with discretionary authority to detain aliens beyond the removal period, or release them under supervision.  Section 1226(a) authorizes the arrest, detention and release of aliens pending a decision on whether the alien is to be removed from the United States, except as provided in § 1226(c).  See 8 U.S.C. § 1226(a).  Section 1226(b) authorizes the Attorney General to "at any time . . . revoke a bond or parole authorized under subsection (a) of this section, rearrest the alien under the original warrant, and detain the alien."  8 U.S.C. § 1226(b).  Section § 1226(c), an exception to § 1226(a), mandates detention of specified criminal aliens during removal proceedings, provided detention does not continue for a prolonged period of time.  See 8 U.S.C. § 1226(c); Diop v. ICE/Homeland Sec., 656 F. 3d at 232 ("At a certain point, continued detention becomes unreasonable and the Executive Branch's implementation of § 1226(c) becomes unconstitutional unless the Government has justified its actions at a hearing inquiring into whether continued detention is consistent with the law's purposes of preventing flight and dangers to the community").  Section 1226 provides in full:

> (a) Arrest, detention, and release
>
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States.  Except as provided in subsection (c) of this section and pending such decision, the Attorney General –
>
>  (1) may continue to detain the arrested alien; and

(2) may release the alien on –

   (A) bond of at least $1,500 . . ; or

   (B) conditional parole; but

 (3) may not provide the alien with work authorization . . . unless the alien is lawfully admitted for permanent residence or otherwise would . . . be provided such authorization.

(b) Revocation of bond or parole

The Attorney General at any time may revoke a bond or parole authorized under subsection (a) of this section, rearrest the alien under the original warrant, and detain the alien.

(c) Detention of criminal aliens

(1) Custody

The Attorney General shall take into custody any alien who -

(A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,

(B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,

(C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence[d] to a term of imprisonment of at least 1 year, or

(D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,

when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

(2) Release

> The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding.  A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

Section 1231(a)(2) requires the Attorney General to detain aliens during the removal period.  See 8 U.S.C. § 1231(a)(2) ("During the removal period, the Attorney General shall detain the alien").  Under § 1231(a)(1)(B), the removal period begins at the latest of several events.  Specifically,

> The removal period begins on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

D.  Statutory Authority for Christie's Detention

In this case, there is no dispute that Christie's removal period has not begun since his removal order is not administratively final.  See 8 U.S.C. § 1231(a)(1)(B).  Accordingly, his pre-removal-period detention is necessarily governed by either § 1226(a), which allows the Immigration Judge to release an alien who is neither a flight risk nor a danger to the community,

or the exception set forth in § 1226(c), which mandates detention prior to the removal period.

See Diop v. ICE/Homeland Sec., 656 F. 3d at 232.  Since Christie's detention has not yet become

prolonged, see Diop at 232, the outcome of this case depends on the meaning of the following

words in § 1226(c)(1):  "The Attorney General shall take into custody any alien [specified in this

section], when the alien is released, without regard to whether the alien is released on parole,

supervised release, or probation, and without regard to whether the alien may be arrested or

imprisoned again for the same offense."  8 U.S.C. § 1226(c)(1).  The government argues that this

language mandates Christie's detention beginning on September 22, 2011, because he was

released from criminal incarceration for a removable conviction listed in § 1226(c) after October

9, 1998, even though Christie was free in the community for 12 years.[5]  Specifically, the

government argues that this Court is required to defer under Chevron to the BIA's interpretation

of § 1226(c) in Matter of Rojas, 23 I.&N. Dec. 117 (BIA 2001), because this statutory language

is ambiguous and it is reasonable to read "when the alien is released" to mean "any time after the

alien is released."

(1) What was the BIA's Holding in Matter of Rojas?

Matter of Rojas involved the alien's appeal to the BIA of the Immigration Judge's

rejection of the argument that Rojas was not subject to mandatory detention under § 1226(c)(1)

because the government failed to apprehend him at the time of his release from incarceration on

parole for an offense covered by § 1226(c), and instead waited two days before taking him into

custody.  See Matter of Rojas, 23 I. & N. Dec. 117.  First, the BIA determined that the language

---

[5] The government states in the Answer that Christie was released from criminal
incarceration in 2010, but the record does not support this contention.  See supra at p. 3 & n.4.

in § 1226(c)(1) is not clear, but is susceptible to different readings.  Id. at 120.  The BIA stated

that, although "[t]he statute does direct the Attorney General to take custody of aliens

immediately upon their release from criminal confinement . . . Congress was not simply

concerned with detaining and removing aliens coming directly out of criminal custody; it was

concerned with detaining and removing *all* criminal aliens."  Id. at 122.  The BIA

> construe[d] the phrasing "an alien described in paragraph (1)," as
> including only those aliens described in subparagraphs (A) through
> (D) of section [1226(c)(1)], and as not including the "when
> released" clause.  Our interpretation is derived from the natural
> meaning of the statutory language, from the object and design of
> the statute as a whole, and from the history of the mandatory
> detention provisions.  It is reinforced by practical concerns that
> would otherwise arise.

Matter of Rojas, 23 I. & N. Dec. at 125.

The BIA held that Rojas "is subject to mandatory detention pursuant to section [1226(c)],

despite the fact that he was not taken into Service custody immediately upon his release from

state custody."  Matter of Rojas, 23 I. & N. Dec. at 127.  Board member Lory Diana Rosenberg

wrote a dissenting opinion in which six board members joined.  Board member Rosenberg

opined:

> The word '"when' [is defined] as 'just after the moment that.'"
> Alikhani v. Fasano, 70 F. Supp. 2d 1124, 1130 (S.D. Cal. 1999)
> (quoting *Webster's Third New International Dictionary* 2602 (3d
> ed. 1976).  Therefore, as one court noted, the clear language of the
> statute requires that "the mandatory detention of aliens 'when' they
> are released requires that they be detained at the time of release."
> Alikhani v. Fasano, supra, at 1130; see also Velasquez v. Reno, 37
> F. Supp. 2d 663, 672 (D.N.J. 1999) ("This court cannot simply
> ignore the plain language of the statute which provides that an
> alien is to be taken into custody 'when the alien is released.'").  As
> another court noted, "Congress could have required custody
> 'regardless of when the alien is released' or 'at any time after the

> alien is released,'" but did not do so.  Alwaday v. Beebe, 43 F.
> Supp. 2d 1130, 1133 (D. Or. 1999) . . . .  These courts have
> concluded uniformly that "[t]he plain meaning of this language is
> that it applies immediately after release from incarceration, not to
> aliens released many year[s] earlier."  Pastor-Camarena v. Smith,
> supra, at 1417-18.

Matter of Rojas, 23 I. & N. Dec. at 132-33 (Rosenberg, dissenting).[6]

The dissenting opinion of Board Member Rosenberg concluded:

> The stretch of interpretation required by the majority's construction
> is not supported by the plain language of the statute and is
> unreasonable.  The aliens described in paragraph (1) of section
> [1226(c)] are the ones who are deemed to be inadmissible and
> deportable for the cited violations and taken into custody when
> they are released from criminal incarceration.  These are the aliens
> described in paragraph (2) as the ones who may not be released.

> The interpretation I reach from a straightforward reading of the
> plain language of the statute would allow for a hearing when an
> individual alien, such as this respondent, has already been released
> into the community, and it would authorize the detention of such
> individuals where warranted following an individualized hearing.

Matter of Rojas, 23 I. & N. Dec. at 139 (Rosenberg, dissenting).

(2) Is This Court Required to Defer to the BIA's Interpretation of § 1226(c) in Rojas?

If "Congress has directly spoken to the precise question at issue," a court and an agency

"must give effect to the unambiguously expressed intent of Congress."  Chevron, 467 U.S. at

842-43.  In the immigration context, "[t]he judiciary is the final authority on issues of statutory

construction and must reject administrative constructions which are contrary to clear

congressional intent.  If a court, employing traditional tools of statutory construction, ascertains

---

[6] The Velasquez opinion cited in the dissenting opinion of Board Member Rosenberg was written by then New Jersey District Judge, now Third Circuit Court of Appeals Judge (Senior), Maryanne Trump Barry.

that Congress had an intention on the precise question at issue, that intention is the law and must

be given effect." INS v. Cardoza-Fonseca, 480 U.S. 421, 447-48 (1987) (quoting Chevron, 467

U.S. at 843 n. 9).  Deference to an agency's interpretation of a statute "is called for only when the

devices of judicial construction have been tried and found to yield no clear sense of

congressional intent." Gen. Dynamics Land Sys., Inc. v. Cline, 540 U.S. 581,  (2004).

In order to sustain the holding of Matter of Rojas, this Court would have to find that

Congress's command that the Attorney General "shall take into custody any alien [specified in

this section], when the alien is released," does not mean what it says, but instead commands that

the Attorney General "shall take into custody any alien [specified in this section], any time after

the alien is released."  This Court agrees with Judge Cavanaugh:

> Rather than taking the plain meaning of the statute, the government
> has re-written the statute . . .  The command that "the Attorney
> General shall take into custody any alien [specified in this section]
> when the alien is released" means just what it says, i.e., the
> Attorney General shall take the alien into custody when the alien is
> released.  Because taking the alien into custody more than [12
> years] after the alien is released does not fall within the command
> to take the alien into custody when the alien is released, the BIA's
> interpretation is contrary to the plain meaning of [§ 1226(c)].

Parfait v. Holder, 2011 WL 4829391 (D.N.J. Oct. 11, 2011).

This reading of § 1226(c) is shared by almost every federal court considering the issue.

See, e.g., Beckford v. Aviles, 2011 WL 3515933 (D.N.J. Aug. 9, 2011); Sylvain v. Holder, 2011

WL 2580506 at *7 (D.N.J. June 28, 2011) ("Respondents also argue that the statute is ambiguous

because it is plausible that the word 'when' means 'after,' and, in that case, the statute commands

that the government 'shall take the alien into custody after the alien is released.'  This Court

rejects the argument that 'when' means 'after.'"); Keo v. Lucero, 2011 WL 2746182  *3 (E.D.

Va. July 13, 2011("[t]he term 'when' includes the characteristic of 'immediacy,' referring in its

primary conjunctive sense, to action or activity occurring 'at the time that' or 'as soon as' other

action has ceased or begun") (citations omitted); Louisaire v. Muller, 758 F. Supp. 2d 229, 236

(S.D.N.Y. 2010) ("Matter of Rojas, however, is wrong as a matter of law and contrary to the

plain language of the statute.  The clear purpose of § 1226(c)(1) is to authorize the mandatory

detention of immigrants who have committed offenses enumerated within § 1226(c)(1)(A)-(D)

*immediately* upon their release from criminal sentences for those *same offenses*, even if they are

still serving part of their sentence out in the community, under 'parole, supervised release, or

probation'"); Dang v. Lowe, 2010 WL 2044634 (M.D. Pa. May 20, 2010) (holding that §

1226(c)(1) does not apply where alien was not taken into immigration custody until 10 years after

release from incarceration for an enumerated offense); Khodr v. Adduci, 697 F. Supp. 2d 774,

774-75 (E.D. Mich. 2010) ("Because the Court finds that the statute at issue clearly and

unambiguously requires the Attorney General to take into custody certain aliens without delay in

order to make applicable the mandatory detention provisions of 8 U.S.C. § 1226(c), the Court

does not defer to the Board of Immigration Appeals' decision to the contrary in Matter of

Rojas"); Scarlett v. DHS, 632 F. Supp. 2d 214, 219 (W.D.N.Y. 2009) ("the statute does not apply

when the alien was not taken into immigration custody at the time of his release from

incarceration on the underlying criminal charges"); Waffi v. Loiselle, 527 F. Supp. 2d 480, 488

(E.D. Va. 2007) ("the mandatory detention statute . . . does not apply to an alien . . . who has

been taken into immigration custody well over a month after his release from state custody" for

an enumerated offense).  But see Diaz v. Muller, 2011 WL 3422856 (D.N.J. Aug 04, 2011)

(finding "when released" to be ambiguous); Gomez v. Napolitano, 2011 WL 2224768 (S.D.N.Y.

May 31, 2011) (same); Sulayao v. Shanahan, 2009 WL 3003199 (S.D. N.Y. Sept. 15, 2009)

(same).

This Court further agrees with Judge Cavanaugh that this reading of § 1226(c) is

consistent with the First Circuit's reading of the statute in Saysana v. Gillen, 590 F. 3d 7 (1st Cir.

2009). See Parfait at *8. Massachusetts released Mr. Saysana in 1991 from a five-year sentence

for a 1990 (removable) conviction. In 2007 DHS took him into custody under 8 U.S.C. §

1226(c)(1) and initiated removal proceedings charging that the 1990 conviction qualified as an

aggravated felony rendering him removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii). See

Saysana, 590 F. 3d at 9. In a precedent decision, Matter of Saysana, 24 I.&N. Dec. 602 (BIA

2008), the BIA held that Saysana was covered by the "when the alien is released" language of §

1226(c) because he was released from state custody on a dismissed non-removable charge after

October 8, 1998. See Saysana, 590 F. 3d at 9. The First Circuit held that, because the plain

meaning of § 1226(c) was contrary to the BIA's reading of the statute, Chevron deference was

not permissible.

> In our view, the natural reading of the statutory provision from top
> to bottom makes clear that the congressional requirement of
> mandatory detention is addressed to the situation of an alien who is
> released from custody for one of the enumerated offenses. The
> statutory language embodies the judgment of Congress that such an
> individual should not be returned to the community pending
> disposition of his removal proceedings. Both the language and the
> structure of the statutory provision state this mandate in a clear and
> straightforward manner. As explained . . . in Oscar v. Gillen, 595
> F. Supp. 2d 166[, 170] (D. Mass. 2009) (Tauro, J.):
>
> > The "when released" provision immediately follows the list
> > of enumerated offenses, indicating that the former modifies
> > the latter. Additionally, § 1226(c) provides that the alien
> > shall be detained upon release regardless of whether he is

15

> subsequently arrested for the "same offense," reinforcing the notion that the entire clause applies to the list of enumerated offenses immediately preceding it.

Saysana, 590 F. 3d at 13-14.

In 2010, the BIA overruled Matter of Saysana in Matter of Garcia Arreola, 25 I.&N. Dec. 267, 270 (BIA 2010), but held fast to Matter of Rojas.  The government took Garcia Arreola into custody and charged him with removal in 2009, when the state dismissed unrelated criminal charges and released him.  The removal was based on a state drug conviction on March 31, 1989, for which a 365-day sentence had been imposed.  The Immigration Judge ruled that Garcia Arreola was not subject to mandatory detention under § 1226(c), and the government appealed. The BIA held that § 1226(c) "requires mandatory detention of a criminal alien only if he or she is released from non-DHS custody after the expiration of the TCPR [on October 8, 1998,] and only where there has been a post-TPCR release that is directly tied to the basis for detention under [§ 1226(c)(1)]." Id. at 269.  The BIA determined that Garcia Arreola was not subject to mandatory detention under § 1226(c) where he was released from custody for an offense covered by § 1226(c) prior to October 8, 1998.  In a footnote, the BIA indicated that it was not receding from Matter of Rojas, 23 I.&N. Dec. 117. Id. at n.4.

This Court joins the overwhelming majority of courts and finds that "Congress clearly intended to give the Attorney General the authority of mandatory detention under § 1226(c)(1) only if the government takes the alien into custody immediately when the alien is released from custody resulting from the removable offense enumerated in § 1226(c).  Because the plain language of the statute commands that an alien is to be taken into custody 'when the alien is released,' this Court may not defer to the BIA's re-writing of the statute." Parfait at *9.  Because

16

the Attorney General did not take Harold Christie into custody when he was released from

criminal incarceration for a removable offense in 1999, but allowed him to live in the community

for 12 years before taking him into custody in September 2011, Christie is not subject to the

mandatory detention exception in § 1226(c)(1).  Christie's pre-removal-period detention is

governed by 8 U.S.C. § 1226(a), which authorizes the Immigration Judge to release him on bond

if the Immigration Judge finds that he is neither a flight risk nor a danger to the community.  This

Court grants a Writ of Habeas Corpus and directs that an Immigration Judge provide Christie

with an individualized bond hearing, pursuant to 8 U.S.C. § 1226(a)(2), to determine if he is a

flight risk or danger to the community, within 10 days of the date of the entry of the Order

accompanying this Opinion.

### III.  CONCLUSION

For the reasons set forth above, the Court grants a Writ of Habeas Corpus and directs that

an Immigration Judge provide Petitioner with an individualized bond hearing pursuant to 8

U.S.C. § 1226(a)(2).


        s/Freda L. Wolfson
        **FREDA L. WOLFSON, U.S.D.J.**


DATED:      January 30, 2012